**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

\* \* \*

Tracy Lynn Rinear,

        Plaintiff,

  v.

Kilolo Kijakazi,*

        Defendant.

Case No. 2:20-cv-01557-BNW

**ORDER re ECF Nos. 24 and 25**

This case involves review of an administrative action by the Commissioner of Social Security denying Plaintiff[1] Tracy Lynn Rinear's application for disability benefits and supplemental security income under Titles II and XVI of the Social Security Act, respectively. The Court reviewed Plaintiff's motion to remand (ECF No. 24), filed July 13, 2021, and the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos. 25, 26), filed August 12, 2021. Plaintiff replied on August 30, 2021. ECF No. 27.

The parties consented to the case being heard by a magistrate judge in accordance with 28 U.S.C. § 636(c) on August 24, 2020. ECF No. 3. This matter was then assigned to the undersigned magistrate judge for an order under 28 U.S.C. § 636(c). *Id*.

**I.    BACKGROUND**

    **1.    Procedural History**

On February 8, 2016 and March 18, 2016,[2] Plaintiff applied for disability benefits and supplemental security income under Titles II and XVI of the Act, respectively, alleging an onset

---

\* Kilolo Kijakazi has been substituted for her predecessor in office, Andrew Saul, pursuant to Federal Rule of Civil Procedure 25(d).

[1] The Court will use claimant and plaintiff throughout this Order. The terms are interchangeable for the purposes of this Order.

[2] There are two different references to when Plaintiff applied for supplemental security income. One notes an application date of February 15, 2016 (ECF No. 20-2 at 161–69) whereas the other provides an application date of March 18, 2016 (ECF No. 20-2 at 172).

date of December 10, 2015.³ ECF No. 20-2⁴ at 170–71; 172–78. Her claim was denied initially and on reconsideration. *Id*. at 81–85; 88–93. A hearing was held before an Administrative Law Judge ("ALJ") on July 29, 2019. ECF No. 20-1 at 89–118. On September 25, 2019, ALJ Cynthia R. Hoover issued a decision finding that Plaintiff was not disabled. *Id*. at 25–42. The ALJ's decision became the Commissioner's final decision when the Appeals Council denied review on June 18, 2020. *Id*. at 7–12. Plaintiff, on August 21, 2020, timely commenced this action for judicial review under 42 U.S.C. § 405(g). *See* IFP App. (ECF No. 1).

## II. DISCUSSION

### 1. Standard of Review

Administrative decisions in Social Security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which [s]he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides." The court may enter "upon the pleadings and transcripts of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See id*.; *Ukolov v. Barnhart*, 420 F.3d 1002 (9th Cir. 2005). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006); *Thomas v. Barnhart*,

---

³ Title II of the Social Security Act provides benefits to disabled individuals who are insured by virtue of working and paying Federal Insurance Contributions Act (FICA) taxes for a certain amount of time. Title XVI of the Social Security Act is a needs-based program funded by general tax revenues designed to help disabled individuals who have low or no income. Although each program is governed by a separate set of regulations, the regulations governing disability determinations are substantially the same for both programs. *Compare* 20 C.F.R. §§ 404.1501– 1599 (governing disability determinations under Title II) *with* 20 C.F.R. §§ 416.901–999d (governing disability determinations under Title XVI).

⁴ ECF No. 20 refers to the Administrative Record in this matter which, due to COVID-19, was electronically filed. (Notice of Electronic Filing (ECF No. 20)). All citations to the Administrative Record will use the CM/ECF page numbers.

278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004). When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are not sufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible, and where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Id.*

### 2. Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous

period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of her claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform her prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that she can make a finding of disability or non-disability, a determination will be made, and no further evaluation is required. *See* 20 C.F.R. § 404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

Step one requires the ALJ to determine whether the individual is engaged in substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)–(b). If the individual is engaged in SGA, then a finding of not disabled is made. If the individual is not engaged in SGA, then the analysis proceeds to step two.

Step two addresses whether the individual has a medically determinable impairment that is severe or a combination of impairments that significantly limits her from performing basic work activities. *Id.* § 404.1520(c). An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on the individual's ability to work. *Id.* § 404.1521; *see also* Social Security Rulings ("SSRs") 85-28, 96-3p, and 96-4p.[5] If the individual does not have a severe medically determinable impairment or combination of impairments, then a finding of not disabled is made. If the individual has a severe medically determinable impairment or combination of impairments, then the analysis proceeds to step three.

---

[5] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are "entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Bray*, 554 F.3d at 1224 (citations omitted) (finding that the ALJ erred in disregarding SSR 82-41).

Step three requires the ALJ to determine whether the individual's impairments or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If the individual's impairment or combination of impairments meets or equals the criteria of a listing and the duration requirement (20 C.F.R. § 404.1509), then a finding of disabled is made. 20 C.F.R. § 404.1520(h). If the individual's impairment or combination of impairments does not meet or equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

But before moving to step four, the ALJ must first determine the individual's residual functional capacity ("RFC"), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p. In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence. 20 C.F.R. § 404.1529; *see also* SSRs 96-4p and 96-7p. To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p.

Step four requires the ALJ to determine whether the individual has the RFC to perform her past relevant work ("PRW"). 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years. In addition, the work must have lasted long enough for the individual to learn the job and performed a SGA. 20 C.F.R. §§ 404.1560(b) and 404.1565. If the individual has the RFC to perform her past work, then a finding of not disabled is made. If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual is able to do any other work considering her RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If she is able to do other work, then a finding of not disabled is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for providing evidence demonstrating that other work exists in significant numbers in the economy that the individual can do. *Yuckert*, 482 U.S. at 141–42.

Here, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920. ECF No. 20-1 at 30–42.

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of December 10, 2015. *Id*. at 30.

At step two, the ALJ found that Plaintiff had the following medically determinable "severe" impairments: anxiety disorder/PTSD/panic disorder; asthma; depressive disorder/bipolar disorder, type II; headaches/migraines; and hypertension. *Id*. at 31.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1, specifically noting Listings 1.04, 3.03, 12.03, 12.04, 12.06, and 12.15. *Id*. at 31–32.

Before moving to step four, the ALJ also found that Plaintiff had the RFC to perform medium work with the following exceptions: She can lift and carry 50 pounds occasionally; she can lift and carry 25 pounds frequently; she can stand and/or walk for 6 hours in an 8-hour workday; she can sit for 6 hours in an 8-hour workday; she can climb ramps and stairs; she can balance; she can frequently climb ladders, ropes, and scaffolds; she can stoop, kneel, crouch, and crawl;[6] she must avoid concentrated exposure to temperature extremes, fumes, odors, dusts, gases, poor ventilation, etc.;[7] she must avoid workplace hazards such as heights and dangerous moving machinery; she is capable of understanding and remembering simple instructions and

---

[6] In the manner written, the ALJ's decision makes it unclear whether there are limitations to Plaintiff's ability to stoop, kneel, crouch, and crawl.
[7] The ALJ used "etc."

work-like procedures with a reasoning level of 1-3; she is able to sustain adequate attention and concentration to complete simple tasks; and she is able to interact appropriately with the public and co-workers in brief, non-intensive encounters. *Id*. at 34.

At step four, the ALJ found that Plaintiff can perform past relevant work as a maid. *Id*. at 40.

At step five, the ALJ alternatively found, considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. *Id*. at 41–42. Specifically, she found that Plaintiff can work as a hand packager, laundry worker, and order selector. *Id*. The ALJ then concluded that Plaintiff was not under a disability at any time from December 10, 2015 through the date of her decision. *Id*. at 42.

**3.    Analysis**

**a.    Whether the ALJ properly weighed the opinion of treating physician Dr. Rogelio Machuca, M.D.**

**i.    Dr. Machuca's opinion**

Dr. Machuca began treating Plaintiff in October 2017 and continued doing so through, at least, May 2019 for various physical needs, including back pain and headaches. ECF No. 20-3 at 125, 163. He completed a RFC Assessment form in January 2018, where he opined that she would be limited to sitting and standing/walking for four hours during an eight-hour workday. ECF No. 20-2 at 434–35. Dr. Machuca also opined that Plaintiff's symptoms would "constantly" interfere with the attention and concentration required to perform simple work-related tasks. *Id*. at 435. The treating physician also noted that a side effect of Plaintiff's medication is dizziness and that this would impact her ability to work. *Id*. at 434.

Among other findings, Dr. Machuca opined that Plaintiff can walk half of a city block before needing rest or experiencing significant pain, she would require a 15-minute unscheduled break every 30 minutes, and she would miss at least 4 days of work per month. *Id*. at 434–35. Additionally, her treating physician concluded that she could never lift and carry 20 or 50 pounds, though she could frequently lift and carry less than 10 pounds and occasionally lift and carry 10

pounds. *Id*. at 434. Finally, Dr. Machuca noted that Plaintiff has no limitations in repetitive reaching, handling, or fingering. *Id*.

### ii. The ALJ's decision

The ALJ gave Dr. Machuca's opinion "little to no weight." ECF No. 20-1 at 40. According to the ALJ, the treating physician's opinion is "overly restrictive and not supported by or consistent with the objective medical evidence or record as a whole." *Id*. The ALJ then stated that various imaging studies and physical and neurological examinations resulted in "mild" findings and that Plaintiff's treatment has been "routine and conservative." *Id*.

### iii. The parties' arguments

Plaintiff moves to remand this matter, arguing that the ALJ did not provide "specific and legitimate" reasons for discounting Dr. Machuca's opinion because she "did not make an effort to explain *how* the opinion was unsupported or inconsistent." ECF No. 24 at 13 (emphasis in original). Plaintiff explains that the ALJ impermissibly relied on "vague references to imaging results and mild examination findings[,]" and this "barebones analysis precludes the Court from conducting meaningful review or determining whether the ALJ's determination is supported by substantial evidence . . . ." *Id*. at 13–14. Plaintiff further argues that the ALJ's reason to discount Dr. Machuca's opinion because her treatment was "routine and conservative" is a misrepresentation of the facts and law and is, on its own, "not a legitimate reason to discount the physician's subsequent medical opinion about the extent of the disability." *Id*. at 17.

Conversely, the Commissioner argues that the ALJ properly evaluated Dr. Machuca's opinion. ECF No. 25 at 7. She explains that, contrary to Plaintiff's position, the "ALJ's reasoning was not so vague that the Court cannot meaningfully review the conclusion . . . ." *Id*. at 8. She also argues that, even absent such specificity, Dr. Machuca's opinion is inconsistent on its face and, as such, the ALJ's decision should be affirmed. ECF No. 25 at 9–10.

### iv. Whether the ALJ properly weighed the Dr. Machuca's opinion

The Ninth Circuit classifies medical opinions into three hierarchical categories: (1) treating physicians (i.e., those who treat the plaintiff), (2) examining physicians (i.e., those who examine, but do not treat the plaintiff), and (3) non-examining physicians (i.e., those who do not

treat or examine the plaintiff).[8] *Lester v. Chater*, 81 F.3d 821, 830. "Because treating physicians are employed to cure and thus have a greater opportunity to know and observe the patient as an individual, their opinions are given greater weight than the opinions of other physicians." *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *see also Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2008) ("Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's.").

An ALJ may reject a treating physician's uncontradicted opinion by providing "clear and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017). If, however, a treating physician's opinion is contradicted, the ALJ may only reject it with "specific and legitimate" reasons supported by substantial evidence in the record. *Orn v. Astrue*, 495 F.3d 625, 628 (9th Cir. 2007). This is to mean that the ALJ "'must do more than offer his conclusions; he must set forth his own interpretations and explain why they, rather, than the doctor['s], are correct.'" *Belanger v. Berryhill*, 685 Fed. App'x 596, 598 (9th Cir. 2017). This is a necessary step so that the reviewing court does not speculate as to the basis of the findings when determining whether substantial evidence supports the ALJ's decision.

Here, the ALJ discounted Dr. Machuca's opinion, finding it "overly restrictive and not supported by or consistent with the objective medical evidence or record as a whole." *Id*. In discounting the treating physician's opinion, the ALJ further reasoned that various imaging

---

[8] The SSA changed the framework for how an ALJ must evaluate medical opinion evidence for claims filed on or after March 27, 2017. *Revisions to Rules Regarding the Evaluation of Medical Evidence*, 2017 WL 168819, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c. The new regulations provide that the ALJ will no longer "give any specific evidentiary weight . . . to any medical opinion(s). . . ." *Revisions to Rules*, 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Here, Plaintiff applied for Title II and XVI benefits on February 8, 2016 and March 18, 2016, respectively. ECF No. 20-2 at 170–78. This would, therefore, make the old regulations discussed above applicable to Plaintiff's claims. 20 C.F.R. § 404.1520c ("For claims filed before March 27, 2017, the rules in § 404.1527 apply.").

studies and physical and neurological examinations resulted in "mild" findings and that Plaintiff's treatment has been "routine and conservative." *Id*.

As discussed below, these are not "specific and legitimate" reasons supported by substantial evidence in the record.

First, the ALJ cannot discount a treating physician's opinion by simply stating that it is not supported by objective findings because this boilerplate conclusion "does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim." *Embrey v. Bowen,* 849 F.2d 418, 421 (9th Cir. 1988). Here, the ALJ listed the objective factors, namely that "findings on x-rays, MRIs, CT scans, and physical and neurological examinations were mild." ECF No. 20-1 at 40. While the ALJ (incompletely) summarized[9] the results from the lumbar spine X-ray, lumbar spine MRI, and brain CT, she failed to specify *how* these findings conflicted with Dr. Machuca's opinion. She also failed to specify which physical and neurological examinations conflicted with Dr. Machuca's opinion and how they did so.[10] Without this specificity, the Court is unable to determine whether the ALJ's reason was specific and legitimate. And, while the Commissioner relies on *Molina v. Astrue*, 674 F.3d 1104, 1121 (9th Cir. 2012) to argue that the ALJ's decision must be affirmed "if [the ALJ's] path may reasonably be discerned[,]" the Court cannot, in this case, reasonably discern the ALJ's path, especially in light of the ALJ's incomplete characterization of Plaintiff's diagnostic studies.

Plaintiff underwent a lumbar spine MRI in December 2017. ECF No. 20-2 at 427–30. The impressions revealed moderate bilateral neural foraminal stenosis and two annular tears. *Id*. Yet the ALJ summarized this MRI as "demonstrat[ing] only *mild* multilevel degenerative changes[.]" ECF No. 20-1 at 38 (emphasis in original). This is an incomplete characterization of the

---

[9] For example, the ALJ represented that the lumbar spine MRI *only* showed "*mild* multileveal degenerative changes[.]" ECF No. 20-1 at 38 (emphasis in original). This, however, was an incomplete characterization of the diagnostic study, as the MRI showed other (and, at times, arguably more severe) findings (e.g., annular tears, mild-to-moderate stenosis). ECF No. 20-2 at 427–30.

[10] While the Commissioner attempts to fill in these gaps by creating a nexus between the ALJ's medical summary and Dr. Machuca's opinion (*see* ECF No. 25 at 8–9), the Court, as the Commissioner knows, is bound to affirm an ALJ's decision based only on a ground the ALJ invoked. *See Connett v. Barnhart,* 340 F.3d 871, 874 (9th Cir. 2003) ("We are constrained to review the reasons the ALJ asserts."); *Orn*, 495 F.3d at 630.

diagnostic impressions. *Compare* ECF No. 20-1 at 38 *with* ECF No. 20-2 at 427–30. Additionally, the ALJ characterized the brain CT as normal and remarkable despite the CT impression noting "[m]inimal scattered T2 hyperintense white matter lesions possibly related to the complications of migraine, vasculitis or chronic ischemic change." ECF No. 20-3 at 182.

Next, the ALJ discounted Dr. Machuca's opinion because "[t]reatment has been routine and conservative." It is unclear to the Court whether the ALJ was referring to Dr. Machuca's treatment or Plaintiff's overall treatment. That said, Plaintiff underwent several injections, including Toradol or Dexamethasone injections that were performed at Dr. Machuca's practice. ECF No. 20-3 at 99 (April 25, 2019), 101 (January 6, 2019), 106 (November 5, 2018), 112 (April 13, 2018), 115 (February 16, 2018), 116 (January 5, 2018), 123 (November 13, 2017). Even if these injections amount to conservative treatment, as the Commissioner suggests, "the failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability." *Trevizo*, 871 F.3d at 677.

Finally, as Plaintiff explains, the ALJ was obligated to consider other factors like the length of the treating relationship and frequency of examination in weighing Dr. Machuca's opinion. ECF No. 24 at 13, 18. But the ALJ did not consider these other factors, and, as the Ninth Circuit has held, "[t]his failure alone constitutes reversible legal error." *Trevizo*, 871 F.3d at 676.

In short, the ALJ's failure to provide specific and legitimate reasons supported by substantial evidence to discount the opinion of treating physician Dr. Machuca amounts to legal error. *Garrison*, 759 F.3d at 1012–13 ("[A]n ALJ errs when [s]he rejects a medical opinion or assigns it little weight while . . . criticizing it with boilerplate language that fails to offer a substantive basis for h[er] conclusion."). And this error is not harmless because if Dr. Machuca's opinion were fully credited, an ALJ "could have reached a different disability determination." *Stout*, 454 F.3d at 1056 (explaining that an error is harmless only if the reviewing court "can confidently conclude that no ALJ, when fully crediting the [evidence], could have reached a different disability determination").

### b. Whether the ALJ properly weighed the opinion of consultative examiner Dr. Sunshine Collins, PsyD

#### i. Dr. Collins' Opinion

Dr. Sunshine Collins, PsyD performed a one-time psychological examination of Plaintiff on behalf of the Social Security Administration in October 2016 and submitted a report with her findings to the Administration. ECF No. 20-2 at 399. Dr. Collins obtained Plaintiff's history; performed a mental status examination ("MSE"); and reviewed records provided by the Administration, including a discharge summary from Plaintiff's 2015 four-day hospitalization for a possible suicide attempt and Plaintiff's adult function report completed in 2016. *Id*. at 399–408.

Dr. Collins opined that Plaintiff "made satisfactory effort to respond correctly or appropriately to MSE tests and queries" and diagnosed her with major depressive disorder, recurrent episode, with mood congruent psychotic features. *Id*. at 406–07.

The examining psychologist concluded that Plaintiff is not able to understand, remember, and carry out an extensive variety of complex instructions because she made errors in her performance on serial sevens, serial threes, fund of information, vocabulary, abstraction, and instructions and motor skills tasks. *Id*. 406. And she further concluded that Plaintiff cannot understand, remember, and carry out detailed instructions because of errors in her performance on serial sevens, serial threes, fund of information, vocabulary, and abstraction tasks. *Id*. She also opined that Plaintiff could not maintain concentration and attention sufficient to carry out instructions because of her performance on various tests conducted during the examination. *Id*. at 407. Moreover, Dr. Collins found that Plaintiff is not able to interact appropriately with the public because of Plaintiff's self-reported symptom of not being comfortable around people. *Id.* at 406.

However, Dr. Collins did opine that Plaintiff is able to understand, remember, and carry out simple one- or two-step instructions based on her performance on tasks administered under one- or two-step instruction. *Id*. Additionally, the doctor found that Plaintiff can interact appropriately with co-workers and supervisors because of Plaintiff's comportment during the examination. *Id.*

Finally, Dr. Collins noted that Plaintiff's prognosis is good and dependent on mental health treatment. *Id*. at 407.

### ii. The ALJ's decision

The ALJ assigned "little to no weight" to Dr. Collins' opinion, citing three reasons. ECF No. 20-1 at 37.

First, the ALJ stated that while Dr. Collins performed the exam, another medical provider—Dr. Lenkeit—signed the reported. *Id*. The ALJ also explained that Dr. Collins is not a licensed psychologist but, instead, "only a psychological assistant," thus making her not an "acceptable medical source." *Id*.

Second, the ALJ reasoned that Dr. Collins' mental status examination findings are inconsistent with those findings made by Plaintiff's "other treating sources[.]" *Id*.

Finally, the ALJ discounted Dr. Collins' opinion because another examining physician—Dr. Mumford—opined that Plaintiff "'creates the impression of symptoms magnification and suboptimal effort.'" *Id*.

### iii. The parties' arguments

Plaintiff moves to remand this matter because she argues that the ALJ erred by discounting Dr. Collins' opinion. ECF No. 24 at 19.

Plaintiff rebuts each of the ALJ's three cited reasons. First, she explains that Dr. Collins was an acceptable medical source because she became a licensed psychologist approximately one month before rendering her opinion" and because her opinion "was made under the supervision of [a] licensed physician." *Id*. at 20. Plaintiff alternatively argues that even if Dr. Collins were not an acceptable medical source, the ALJ still had a duty to consider her opinion. *Id*. at 19.

Second, Plaintiff argues that, contrary to the ALJ's finding, Dr. Collins' opinion is supported by other evidence in the record, citing other medical providers' findings regarding Plaintiff's mental state and ability to, for example, complete work tasks, retain information, and interact with others. *Id*. at 21–22.

Finally, Plaintiff argues that the ALJ's reliance on Dr. Mumford's opinion that Plaintiff "'creates the impression of symptoms magnification and suboptimal effort'" is misplaced. *Id*. at

22. Plaintiff first notes that, unlike Dr. Collins, Dr. Mumford performed a physical—not psychological—examination. *Id*. She next states that Dr. Collins' "herself indicated Plaintiff did not exhibit symptom magnification[.]" *Id*.

The Commissioner agrees with Plaintiff's argument that the ALJ erred in discounting Dr. Collins' opinion on grounds that she was not a licensed psychologist. ECF No. 25 at 18. However, the Commissioner's position is that this error is harmless, as the ALJ provided two other "specific and legitimate" reasons for assigning little to no weight to the examining doctor's opinion. *Id*.

According to the Commissioner, the ALJ "expressly incorporated her prior discussion of evidence in identifying mental status examination findings that contradicted Dr. Collins's opinion[.]" *Id*. She argues that the findings cited by Plaintiff do not "detract from" the ALJ's reasoning that other medical providers found "normal/unremarkable mental status findings that contradicted Dr. Collins's opinion." *Id*. at 20.

Finally, the Commissioner argues the ALJ permissibly relied on Dr. Mumford's opinion that Plaintiff "'creates the impression of symptoms magnification and suboptimal effort'" because, although Dr. Mumford conducted only a physical examination, his observations are "generally relevant to Plaintiff's behavior." *Id*. She further notes that even if the ALJ erred in this respect, she still provided a specific and legitimate reason for discounting Dr. Collins' opinion because of the contradictory MSE findings. *Id*. at 20–21.

        **iv.    Whether the ALJ provided "specific and legitimate" reasons for discounting the opinion of examining physician Dr. Collins**

As noted above, the Ninth Circuit classifies medical opinions into three hierarchical categories: (1) treating physicians, (2) examining physicians, and (3) non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830. "While the opinion of a treating physician is thus entitled to greater weight than that of an examining physician, the opinion of an examining physician is entitled to greater weight than that of a non-examining physician." *Garrison*, 759 F.3d at 1012 (citing *Ryan v. Comm'r of Soc. Sec.,* 528 F.3d 1194, 1198 (9th Cir. 2008)).

According to Ninth Circuit law, an ALJ must provide clear and convincing reasons supported by substantial evidence for rejecting a treating or examining physician's uncontradicted opinion, and specific and legitimate reasons for rejecting a treating or examining physician's contradicted opinion. *See Trevizo*, 871 F.3d at 675; *Ghanim v. Colvin*, 763 F.3d 1154, 1160–61 (9th Cir. 2014). To meet this burden, the ALJ must "se[t]out a detailed and thorough summary of the facts and conflicting clinical evidence, stating h[er] interpretation thereof, and making findings." *Trevizo*, 871 F.3d at 675. However, the ALJ "'must do more than state conclusions. [Sh]e must set forth h[er] own interpretations and explain why they, rather than the doctors', are correct.'" *Garrison*, 759 F.3d at 1012 (quoting *Reddick*, 157 F.3d at 725).

Here, the ALJ provided three reasons for discounting Dr. Collins' opinion. For the reasons explained below, the Court finds that the ALJ failed to provide legally sufficient reasons to discount the psychological consultative examiner's opinion.

Both parties agree the first of these reasons—that Dr. Collins was not a licensed psychologist at the time of the examination—was error. The parties do, however, dispute whether the ALJ committed reversible error with respect to the two other reasons she provided in discounting Dr. Collins' opinion. The Court will address each of these challenged reasons in turn.

The ALJ assigned "little to no" weight to Dr. Collins' opinion because the examining doctor's "findings on mental status examinations are not consistent with other mental status examinations, conducted by the claimant's other treating sources, as discussed above." ECF No. 20-1 at 37. While the ALJ discussed some (though not all) MSE findings elsewhere in her decision, she did not identify how or what *specifically* is inconsistent with the other medical providers' MSE findings and Dr. Collins' MSE findings. This lack of explanation "fails to offer a substantive basis for [the ALJ's] conclusion." *Garrison*, 759 F.3d at 1012–13.

The ALJ's decision not to explain *how* Dr. Collins' MSE findings were inconsistent with those reached by other medical providers is further problematic because some of Dr. Collins' MSE findings were, in fact, consistent with other MSE findings. For example, Dr. Collins found that Plaintiff was alert and oriented and that her dress and grooming were casual. ECF No. 20-2 at 403. This is similar to the MSE findings that the ALJ cites to as being inconsistent with Dr.

Collins' findings. *Compare, e.g.,* ECF No. 20-1 at 36 *with* ECF No. 20-2 at 403. Additionally, Dr. Collins found that Plaintiff could recall two out of three items after a five-minute delay, and practitioners[1] at Montevista Hospital experienced the same results at psychiatric evaluation conducted nearly two years later (on August 14, 2018).[1] *Compare* ECF No. 20-2 at 404 *with* ECF No. 20-3 at 6. Similarly, Plaintiff reported to Dr. Collins that she experienced auditory hallucinations, and Plaintiff reported the same at the time she was placed on a Legal 2000 hold at Montevista Hospital. *Compare* ECF No. 20-2 at 403 with ECF No. 20-3 at 24, 34. Further, Plaintiff denied suicidal and homicidal ideation to Dr. Collins as well as to Nurse Practitioner Zelluyah Gaitho at Alliance Mental Health Specialists PLLC. *Compare* 20-2 at 403 *with* ECF No. 20-3 at 129.

      The ALJ also did not discuss how Plaintiff continued to identify as anxious or depressed and complain of panic attacks during some of these "largely" unremarkable MSEs or that Plaintiff continued to struggle with the symptoms of her mental health issues despite receiving medication and therapy. *See, e.g.,* ECF No. 20-3 at 136, 142, 145, 149. Nor did she explain why the "largely" unremarkable MSE findings were more accurate than Dr. Collins' findings, further indicating that the ALJ may have impermissibly "cherry picked" from mixed evidence to support a denial of benefits. *See Garrison*, 759 F.3d at 1014.

      Furthermore, the ALJ did not acknowledge the potential differences in the manner the medical providers performed the MSEs. For example, in determining Plaintiff's judgment and comprehension, Dr. Collins asked Plaintiff three questions (i.e., why do many foods need to be cooked; why is it important to study history; and why does land in the city cost more than land in the country) and found that Plaintiff could accurately answer two of the three questions. ECF No. 20-2 at 404. Conversely, to determine Plaintiff's judgment and insight, Nurse Practitioner Zelluyah Gaitho at Alliance Mental Health Specialists PLLC determined Plaintiff's judgment and insight based on her "willingness to seek treatment." ECF No. 20-2 at 130.

      Finally, the ALJ discounted Dr. Collins' opinion because another examining physician—Dr. Mumford—opined that Plaintiff "'creates the impression of symptoms magnification and suboptimal effort[.]'" ECF No. 20-1. As Plaintiff correctly points out, Dr. Mumford, who

specializes in internal medicine, performed a physical—not psychological—examination of Plaintiff.[11] Moreover, Dr. Mumford's finding that Plaintiff was malingering was, as the ALJ explains, *specific* only to her "grip strength testing on dynamometer[.]" ECF No. 20-1 at 38.

And, as Plaintiff also notes, Dr. Collins opined on Plaintiff's credibility, concluding that Plaintiff "made satisfactory effort to respond correctly or appropriately to MSE tests and queries." ECF No. 20-2 at 406. Furthermore, even assuming that Dr. Mumford disagreed with Dr. Collins' opinion, which would be difficult to find as Dr. Mumford did not assess Plaintiff's mental health impairments, such disagreement, by itself, cannot be a legitimate reason for discounting Dr. Collins. *See Jarvis v. Berryhill*, 722 F. App'x 616, 618 (9th Cir. 2018).

Accordingly, the Court finds that the ALJ erred by not providing specific and legitimate reasons supported by substantial evidence to discount Dr. Collins' opinion and that this error is not harmless because it impacted, at the minimum, the ALJ's RFC assessment and, thus, the ultimate non-disability determination. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (explaining that an error is harmless where it is "inconsequential to the ultimate nondisability determination"); *see also Stout*, 454 F.3d at 1055.

## III.    CONCLUSION AND ORDER

Accordingly, **IT IS HEREBY ORDERED** that the Commissioner's decision is REVERSED and this matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Order.

**IT IS FURTHER ORDERED** that the ALJ, if necessary, re-evaluate Plaintiff's RFC and the hypothetical presented to the Vocational Expert.

**IT IS FURTHER ORDERED** that Plaintiff's motion to remand (ECF No. 24) is GRANTED.

**IT IS FURTHER ORDERED** that the Commissioner's cross-motion to affirm and response to Plaintiff's motion to remand (ECF Nos. 25, 26) is DENIED.

---

[11] The Court notes that Dr. Mumford included his opinions regarding Plaintiff's orientation, sensorium, attention, and memory, finding that Plaintiff's sensorium is clear and alert; she is oriented to person, place, time, and the purpose of the evaluation; her immediate recall is not impaired; and her recent and remote memory are intact. ECF No. 202 at 420.

**IT IS FURTHER ORDERED** that the Clerk of Court is kindly directed to close this case.

DATED: March 28, 2022.

BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE